DEBORAH SISTRUNK,

         Plaintiff,

  - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

         Defendant.

MEMORANDUM
AND ORDER
14-CV-3208(JG)

APPEARANCES:

  OLINSKY LAW GROUP
    One Park Place
    300 South State Street, Suite 520
    Syracuse, NY 13202
  By: Howard D. Olinsky
    *Attorneys for Plaintiff*

  LORETTA E. LYNCH
    United States Attorney
    Eastern District of New York
    271 Cadman Plaza East
    Brooklyn, NY 11201
  By: Arthur Swerdloff
    *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

  Deborah Sistrunk seeks review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration's denial of her application for Social Security Disability benefits. The parties have cross-moved for judgment on the pleadings. Sistrunk asserts that the Administrative Law Judge ("ALJ") committed various errors in finding her not disabled and seeks a remand to the Acting Commissioner of Social Security (the "Commissioner") for further proceedings. The Commissioner requests that I affirm her decision. I heard oral argument on December 19, 2014.

For the reasons that follow, Sistrunk's motion is granted and the Commissioner's motion is denied. The case is remanded to the Commissioner for further proceedings consistent with this decision.

BACKGROUND

Sistrunk was born on March 12, 1966. R. 78. She lives in Far Rockaway, New York, with her husband and three children. R. 44. She finished high school and completed a few semesters of college. R. 44-45. Before she filed for disability benefits, Sistrunk was employed by Heaven's Hands, a day habilitation program, as a supervisor. R. 46. At Heaven's Hands, she located volunteer positions and activities for young adults with autism. R. 48-49. She was also responsible for inventory and ordering supplies. R. 49. As a supervisor, Sistrunk helped train new employees but did not make decisions about hiring or firing them. R. 50. Before Heaven's Hands, Sistrunk worked for Queens Parent Resources doing case management work. R. 49.

Sistrunk left work at Heaven's Hands in 2009 because she was unable to go up and down stairs because of pain in her knees and back. R. 52. In May 2011, when she was forty-three years old, she filed an application for disability insurance benefits under the Social Security Act. R. 18, 111-17. She alleged a disability onset date of December 27, 2009, due to degenerative joint disease of the spine, herniated discs, bilateral carpal tunnel syndrome, and a pinched nerve in her left shoulder. R. 111, 136. Her application was initially denied on July 22, 2011. R. 80. Sistrunk filed a request for reconsideration on September 15, 2011. R. 83-84.

After a hearing on July 9, 2012, Administrative Law Judge ("ALJ") Gal Lahat denied her claim on October 12, 2012. R. 14, 30. Sistrunk was not represented during the hearing. The Appeals Council denied Sistrunk's request for review, R. 1-4, after which the ALJ's decision became the final decision of the Commissioner.

2

A.  *Hearing Testimony and Non-Medical Evidence*

Sistrunk testified that her back pain is her most serious condition because sometimes it prevents her from getting out of bed or putting on her shoes and socks. R. 51. Sistrunk thinks her back pain started around the time of a car accident in 2008. R. 52. She has pain in her legs that keeps her from sitting or standing for too long, and sometimes her leg gives out, like when she walks home from church. R. 52-54. She stopped going to physical therapy because it hurt too badly, and although she was given a prescription for pain medication, she cannot take the medication because of a heart irregularity. R. 54-55. She does not take any medications by mouth other than her blood pressure medication. R. 55.

Sistrunk sees Dr. Alexander Vaysman as her primary care physician. R. 55. Vaysman prescribed pain cream for Sistrunk's back because he knows she does not take oral medications. R. 55. She also saw a specialist, Dr. David Steiner, for her back pain. R. 56-57.

Sistrunk testified she also suffers from knee problems and has near-constant pain in her right knee and occasional pain in her left knee. R. 58-59. She has shoulder pain whenever she lies on her stomach or side, so she has to lie on her back with a pillow under her arm. R. 60-61. Sistrunk takes medication for high blood pressure, and has for eleven years. R. 61. She used to take a second medication for high blood pressure but stopped when it gave her heart palpitations. R. 61-62. Sistrunk has carpal tunnel in both hands, and she sometimes drops what she picks up. She wears a brace on her hands to sleep. R. 67-68.

Sistrunk said she can walk a block or two at a time, stand for about twenty minutes at a time, sit for thirty minutes to an hour, and cannot lift more than two pounds. R. 63-64. Sistrunk can dress herself but her husband sometimes bathes her. R. 64. Sistrunk's mother comes to the house to help with chores. R. 65. Sistrunk cannot take her children to the park. R.

65-66. She drives her children to school and sometimes drives to church. She does not take public transportation because of the stairs. R. 66-67.

B.    *Medical Evidence Considered by the ALJ*

The medical evidence that the ALJ considered in his decision primarily consists of records from Sistrunk's treating physician, Dr. Vaysman, which the ALJ afforded "significant weight." R. 29. The records from Vaysman begin in June 2008, when Sistrunk first visited him complaining of blurry vision, dizziness, and headaches. R. 214. Vaysman recommended that she see an eye doctor and diagnosed Sistrunk with obesity and hypertension. He recommended that she follow a reduced-calorie diet and exercise three times per week, and mentioned that she has a mitral valve murmur. R. 214. Sistrunk visited Vaysman again in August 2008 after a car accident and complained of headache, neck pain, and back pain. R. 224. Vaysman wrote that the severity of Sistrunk's neck pain was eight on a scale of one to ten, that she had numbness in both arms and legs, and "severe tenderness on self-palpation in the projection of C6-C7 and L4-L5, and inability to fully flex her lumbosacral spine and C-spine." R. 224. He noted that a relative helped move Sistrunk around and get up from the chair. R. 224. Vaysman wrote that Sistrunk would begin physical therapy three times per week. R. 224.

In his decision, the ALJ noted from this visit to Dr. Vaysman that there was no mention of vision problems that had been diagnosed previously, and that according to Vaysman, Sistrunk was "unable to work right now." R. 21. Then, referring to records of physical therapy from August 2008, the ALJ noted that Sistrunk complained "*only* of low back pain with radiation to the legs." R. 22 (emphasis in ALJ's opinion). However, notes from the initial physical therapy assessment in August 2008 show that Sistrunk also complained of spine pain and difficulty moving, transferring in bed, and with lifting and bending. Sistrunk described her pain

4

as a nine on a scale of one to ten. R. 242. Concerning a September 2008 visit to physical therapy, the ALJ noted that Sistrunk said, "she would like to return to work and that her *only* concerns were her ability to handle pulling, pushing and lifting objects weighing five to ten pounds." R. 22 (emphasis in ALJ's opinion).[1]

In September 2008, Sistrunk visited Dr. Vaysman to follow up regarding her neck and back pain. R. 223. Sistrunk said her back pain was a six on a scale of one to ten. R. 223. A physical examination showed decreased flexion and lateral flexion of the cervical spine and lumbosacral spine, tenderness on palpation of the L4-L5 and C6-C7 spinal processes, and diminished reflexes in both knees and biceps. R. 223. The ALJ also noted that Sistrunk complained about pain in her foot and left knee during this visit. R. 22. Vaysman wrote that Sistrunk is receiving physical therapy and that she needed magnetic resonance imaging ("MRI") to rule out herniated discs. R. 223. He wrote that Sistrunk "would like to return [to] work to see if she can handle pulling, pushing, and lifting object[s] more than 5 to 10 pounds." R. 223.

In December 2008, Sistrunk had MRIs taken of her cervical and lumbar spine. *See* R. 206-08. As summarized by Dr. Vaysman in notes from a September 2011 visit, the MRI of the cervical spine showed disc bulging at multiple levels and disc herniation at the C5-C6 disc level. R. 207-08, 212. The MRI of Sistrunk's lumbosacral spine showed multiple disc bulges on several levels from L3-L4 through L5-S1. R. 212. An MRI of the right knee showed joint space narrowing and spur formation. R. 212.

In notes from the next recorded visit to Dr. Vaysman dated January 1, 2009, the doctor reported that Sistrunk "is able to walk and do household activities although pain is aggravated by lifting and pushing objects heavier than ten pounds." R. 22. The ALJ noted that

---

[1] The physical therapy notes show that Sistrunk's last treatment occurred in February 2009, and the ALJ noted that during that visit, Sistrunk "complain[ed] *only* of low back pain with radiation to the legs." R. 22 (emphasis in ALJ's opinion).

5

Sistrunk still had a diagnosis of spinal radiculopathy in the cervical and lumbosacral area, and was taking Motrin and would get a sample of a pain gel.  R. 22.

The next visit discussed by the ALJ was in May 2009, when Sistrunk complained of dizziness and a headache, and had elevated blood pressure.  R. 22, 220.  She was diagnosed with hypertension.  R. 23.  Dr. Vaysman upgraded Sistrunk's diagnosis to severe hypertension along with obesity and sleep apnea in June 2009, after Sistrunk visited the emergency room for severe fatigue.  R. 23, 218.  Vaysman noted that Sistrunk needed to lose 60 pounds.  R. 218.  The ALJ noted that the only recorded visit with Vaysman in 2010 was in July; Sistrunk had lost 37 pounds but needed to lose an additional 100 pounds.  R. 23, 215.  Sistrunk had nearly the same weight in a February 2011 visit, and was diagnosed with obesity and advised on how to lose weight.  R. 23, 213.

Sistrunk returned to physical therapy in February 2011, where she complained of pain in her knees and lower back that was aggravated by walking, bending, and lifting.  R. 24.  The initial evaluation report said that balance and tolerance sitting, standing, and endurance are "normal."  R. 203.  The "functional assessment" showed that self-care, mobility, transfers, and ambulation are "independent."  R. 203.  The ALJ noted that Sistrunk attended six physical therapy sessions and stopped in March 2011.  R. 24.

Sistrunk went to the emergency room complaining of lower back pain in May 2011, and then again in June 2011 complaining of weakness and fatigue. R. 27.  During the May visit, Sistrunk was diagnosed with degenerative disc disease, lumbar strain, and myalgia of the lower back.  R. 27.

In notes from a visit with Dr. Vaysman dated September 2011, the doctor said that Sistrunk "is unable to lift, pull, and push objects *heavier than ten to fifteen pounds*."  R. 24

(emphasis in ALJ's opinion). During this visit, Sistrunk complained of pain in the spine shooting down to her left leg and into her left wrist. R. 24. The ALJ noted that at the time, Vaysman diagnosed Sistrunk with "systemic osteoarthritis, carpal tunnel syndrome, [and] cervical spine and lumbosacral spine radiculopathy," as well as hypertension and obesity, and stated that Sistrunk would go to see a neurologist, orthopedic doctor, and podiatrist. R. 24 (citing R. 212).

In September 2011, Sistrunk saw Dr. David Steiner, a neurologist, who diagnosed her with cervical and lumbosacral radiculopathy, paresthesia, polyneuropathy, unspecified internal derangement of the knee and shoulder, mononeuritis of the upper and lower limb, and insomnia with sleep apnea. R. 26, 254-57. He also found she had pain in the forearm, lower leg, hand, and other joints. R. 26, 254-57. In October 2011, Sistrunk had further MRIs taken of her lumbar and cervical spine. In these MRIs, the ALJ noted that there was no mention of a disc herniation that appeared in the report of the 2008 MRI. R. 26, n. 4; *see also* R. 258-62.

There are notes from a hospital stay in October 2011 where Sistrunk had complained of weakness and headaches. The ALJ wrote that just before that hospital stay, Sistrunk had traveled to Alabama and was non-compliant with her blood pressure medications. R. 25, 278. Additionally, notes from a "functional assessment" prepared during her hospital stay show that she was "'independent' in ambulation, personal hygiene, communication, toileting, eating and transfers." R. 301. Sistrunk also denied that pain limited her functional status. R. 25, 301.

The latest notes of visits to Dr. Vaysman are from February 2012, where Sistrunk was examined for palpitations. R. 27. She was told she had an irregular heart beat and a stress

test was recommended. The ALJ noted that in this visit, "[t]here was no mention of lumbar or cervical pain." R. 28.

  C. *The ALJ's Decision*

  In his decision dated July 9, 2012, the ALJ determined that Sistrunk had not engaged in substantial gainful activity from her alleged onset date, December 27, 2009, and that she met the requirements of the Social Security Act (the "Act") through March 31, 2015, the date last insured. R. 16. The ALJ found that Sistrunk had the following severe impairments: Tarsal tunnel syndrome and carpal tunnel syndrome with neuropathy of the upper and lower extremities; degenerative disc disease of the cervical and lumbar spine; obesity with sleep apnea; derangement/arthritis of the knees with osteopenia; and a shoulder impairment. R. 16. The ALJ then determined that none of these impairments, either singly or in combination, met or medically equaled the severity of one of the listed impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. R. 17.

  After summarizing the medical evidence, the ALJ stated that he considered the seven factors set forth in 20 C.F.R. § 404.1529(c)(3) relevant to assessing the claimant's symptoms, and found that (1) "claimant's ability to engage in activities of daily living is not as restricted or limited as she stated in the hearing"; and (2) "[t]he claimant's statement that she is unable to take pain medication because it affected her heart is not supported by the record." R. 28. For those reasons, the ALJ found that the medical records and other evidence "fail to confirm the accuracy of the claimant's allegations of disability as asserted at [the] hearing." R. 29. The ALJ gave "significant weight" to Dr. Vaysman's testimony because of his history of care for the patient and his specialty, and adopted his conclusion that Sistrunk is unable to lift, pull and push objects heavier than ten to fifteen pounds. R. 29.

8

The ALJ found that Sistrunk had the residual functional capacity ("RFC") to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) with these limitations: Sistrunk can lift or carry and push or pull less than ten pounds frequently; stand or walk for two hours in an eight-hour day, and sit for six hours in an eight-hour day; and Sistrunk can occasionally perform reaching, fingering, feeling, climbing, balancing, stooping, kneeling, crouching, and crawling. R. 17.

Finally, the ALJ concluded based on the testimony of a vocational expert that Sistrunk is capable of performing her past work as a caseworker and casework supervisor, which required a sedentary exertional level. R. 29. The ALJ found that this past work does not require performance of duties beyond the claimant's RFC, although he also noted that that the past work as performed by Sistrunk was at the "light exertional level." R. 29, n. 5-6. In conclusion, the ALJ found that Sistrunk was not disabled. R. 29-30.

## DISCUSSION

Sistrunk contends that the ALJ committed several errors. She claims, *inter alia*, that the ALJ erred when he: (1) determined her residual functional capacity; (2) found Sistrunk's testimony about her limitations not credible; and (3) concluded that Sistrunk could perform her past work. Sistrunk also argues that the Appeals Council erred when it determined that Sistrunk's additional evidence did not relate to the time period prior to the ALJ's decision. The Commissioner argues that the decision finding Sistrunk not disabled should be upheld, and the Appeals Council was correct when it did not consider the additional evidence. Because I believe the additional evidence submitted by Sistrunk should have been considered by the Appeals Council, I will turn to that argument first.

A.      *Standard of Review*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The first inquiry requires the court to determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (quotation marks and citation omitted). The second inquiry requires the court to decide if the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also id.* ("Substantial evidence is more than a mere scintilla.") (internal quotation omitted). The hearing on disability benefits is a nonadversarial proceeding, and the ALJ "has an affirmative obligation to develop the administrative record." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) (citation omitted). Moreover, "where a claimant is unrepresented by counsel, the ALJ has a duty to probe scrupulously and conscientiously into and explore all of the relevant facts . . . ." *Id.* (citation omitted).

B.      *Regulatory Standards*

In order to receive disability benefits under the Social Security Act, a claimant must have been disabled during an insured period. 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). To be found disabled, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant may be found disabled only if his impairment or impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration's regulations prescribe a sequential five-step analysis for determining whether a claimant is disabled:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (internal alterations omitted) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (setting forth this process). The claimant bears the burden of proof in the first four steps, the Commissioner in the last. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations," *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citations omitted), or "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). Alternatively, where the record establishes "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose," the court should remand solely for the calculation and payment of benefits. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980) (citation omitted).

    C.    *The Additional Evidence Submitted to the Appeals Council*

After the ALJ's decision in October 2012, Sistrunk provided new evidence from her treating physician, Dr. Vaysman. *See* R. 363-64. The Appeals Council did not consider the additional records because it decided that the records did not pertain to the time period before the ALJ's October 12, 2012 decision, because the "new information is about a later time." R. 2. Sistrunk argues that the new evidence justifies a remand because the ALJ should have considered the additional evidence and further developed the record. *See* Pl. Br. 17-18.

The new evidence consists of two medical source statements from Dr. Vaysman dated December 24, 2012 (R. 364) and February 5, 2013 (R. 363). In the new record dated February 5, 2013, Vaysman completed a "Physical Capacity Evaluation," which specifies that Sistrunk can lift or carry up to fifteen pounds for up to one-third of the workday, and up to ten pounds from one-third to two-thirds of the workday. R. 363. It further states that Sistrunk can stand for up to two hours per day and sit for less than two hours per day. R. 363. In the new record dated December 24, 2012, Vaysman completed a "Social Security Medical Assessment"

in which he stated that he had seen Sistrunk monthly from June 18, 2008, to December 24, 2012. In response to a question on the form about whether Sistrunk is capable of working five days per week and sitting for six to eight hours per day, he answered "no." R. 364.

The Appeals Council must consider "new and material" evidence "where it relates to the period on or before the date of the administrative law judge hearing decision." C.F.R. § 404.970(b). Evidence is "new" if it was not considered by the ALJ and is "not merely cumulative of what is already in the record," and it is "material" if it "is both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (quotation marks and citation omitted). Materiality also requires "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently." *Id.* (citation omitted). Additionally, the evidence "need not have been generated prior to the ALJ's decision to be material." *See Marchetti v. Colvin*, No. 13-CV-02581 KAM, 2014 WL 7359158, at *14 (E.D.N.Y. Dec. 24, 2014) (finding Appeals Council should have considered new evidence) (citing *Newbury v. Astrue*, 321 Fed. App'x 16, 19 (2d Cir.2009)). Instead, evidence of the severity of a claimant's condition may demonstrate that during the relevant time period, the claimant's condition was far more serious than previously thought. *See id.* (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)).

If the Appeals Council had decided that the additional evidence related to the time period prior to the ALJ's decision, it would have "review[ed] the case if it [found] that the administrative law judge's action, findings, or conclusion [was] contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). New evidence submitted to the Appeals

Council following the ALJ's decision becomes part of the administrative record and is subject to judicial review. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

The additional records contain Dr. Vasyman's assessment that Sistrunk cannot sit for over two hours per day, which is consistent with Sistrunk's argument that her condition got worse over time. *See* Pl. Br. 13-14. I do not find it to be cumulative of previous evidence, as it shows the progression of Sistrunk's symptoms and lends credibility to her testimony at the hearing. Although the Appeals Council found that the new records from Vaysman do not relate to the time period prior to the ALJ's decision on October 12, 2012, I think the records support a contrary conclusion. Instead, the records indicate that Dr. Vaysman's opinion that Sistrunk is unable to work is based on the entire time period of his treatment of her, from June 2008 to December 2012. *See* R. 364. Moreover, his opinion is dated December 24, 2012, which is only two months after the ALJ's decision, see R. 364, and nothing in the opinion limits its scope to the time period after October 2012.

Additionally, because the ALJ's careful and thoughtful opinion said he gave "significant weight" to Dr. Vaysman's previous opinions, R. 29, I have no reason to doubt that the ALJ would give the same consideration to this new opinion from the same physician. Therefore, because the additional records from Dr. Vaysman are new and material, the Appeals Council should have considered them before reaching its decision. I remand the case for the purpose of considering the additional evidence.[2]

---

[2] In addition to Sistrunk's argument about the new records from her physician, she contends that the Commissioner improperly found (1) Sistrunk capable of sedentary work, (2) Sistrunk's testimony was not credible, and (3) Sistrunk was capable of her past work. Upon consideration of the new evidence discussed above, the ALJ may reach different decisions on these subjects, so I choose not to address them here.

CONCLUSION

For the reasons explained above, Sistrunk's motion for judgment on the pleadings is granted and the Commissioner's motion is denied. The case is remanded to the Commissioner for proceedings consistent with this decision.

So ordered.

John Gleeson, U.S.D.J.

Dated: January 28, 2015
      Brooklyn, New York